## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Natalia Hubert, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21 C 3360 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| Oswego Junction Enterprises LLC | ) | Magistrate Judge |
| doing business as Prohibition | ) | |
| Junction Sports Bar & Grill, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on several pending discovery motions: Plaintiff's Second Motion to Compel Discovery [ECF 31] ("Plaintiff's Second Motion to Compel"); Plaintiff's Motion to Strike Defendant's Belated Rule 26(a)(1) Disclosures or, in the Alternative to Deem Privileges Waived and Allow Discovery [ECF 47] ("Plaintiff's Motion to Strike"); and Defendant's Motion to Compel and to Extend Discovery Cutoff Date [ECF 50] ("Defendant's Motion to Compel"). For the reasons discussed below, Plaintiff's Second Motion to Compel is granted; Plaintiff's Motion to Strike is denied but the alternative request for relief is granted as to the deemed waiver of the attorney client privilege and the work product doctrine, and to allow discovery consistent with that ruling; and Defendant's Motion to Compel is denied.[1]

---

[1] The Court previously denied without prejudice Defendant's Motion to Compel and to Extend Discovery Cutoff Date [ECF 50] with respect to Defendant's request to extend the discovery cutoff date. [ECF 54, 56]. The Motion remains pending with respect to Defendant's request

# I.

Plaintiff Natalia Hubert ("Plaintiff") sued Defendant Oswego Junction Enterprises, LLC, d/b/a Prohibition Junction Sports Bar & Grill ("Defendant"), her former employer, for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Illinois Human Rights Act, 755 ILCS 5/2 *et seq.* Defendant says it fired Plaintiff because she lied about what happened during a portion of the time when she was in a room alone with her alleged harasser, Tillman Liggins who also worked for Defendant, in the early morning hours of July 24, 2018, at Defendant's restaurant and bar. The incident was captured on closed circuit video, but a 15-minute portion of the video was dark and difficult to see. Defendant says Plaintiff told its attorney and trial counsel in this case, Kenneth McLaughlin, that Liggins grabbed Plaintiff's arm and forcibly pulled her toward him during the segment of the video that was dark when McLaughlin interviewed Plaintiff about the incident. McLaughlin subsequently had the video lightened. After he reviewed it, he told Defendant's owner, Kevin Fialko, that the lightened video did not depict what Plaintiff said had happened during her interview. Fialko says he fired Plaintiff because she was dishonest based on the discrepancy between what McLaughlin told him about his interview of Plaintiff and what the lightened version of the video depicted. Plaintiff denies telling McLaughlin what he says she said about what happened during the darkened portion of the video. Plaintiff and McLaughlin

---

that the Court compel Plaintiff to provide further responses to Defendant's discovery requests.

are the only witnesses to McLaughlin's interview of Plaintiff because Plaintiff's former attorney, who was present for the interview, has since passed away.

McLaughlin took notes during his interviews of both Liggins and Plaintiff, and he sent emails to Fialko relaying some of what was said during those interviews and his thoughts about them. Defendant has produced McLaughlin's interview notes and emails to Fialko, but it has redacted portions of the notes and emails invoking the attorney client privilege and the work product doctrine. Defendant says it is withholding only McLaughlin's "mental impressions" of what he learned during his investigation, but McLaughlin communicated his mental impressions to Fialko before he decided to fire Plaintiff and they informed Fialko's termination decision. Plaintiff moves to compel Defendant to produce the complete, unredacted versions of McLaughlin's interview notes and emails arguing that any privilege has been waived because Defendant has put at issue what McLaughlin told Fialko about his interviews of Plaintiff and Liggins, and what the lightened version of the video tape depicted compared to what McLaughlin says Plaintiff told him when he interviewed her. The Court ordered Defendant to produce the complete, unredacted notes and emails for *in camera* review [ECF 49], and the Court has reviewed those documents. Defendant also has invoked the attorney client privilege and the work product doctrine in declining to respond fully to Plaintiff's Requests for Production of Documents Nos. 5-8, and 10 and Plaintiff's Interrogatory No. 7.

Federal law applies to the Court's determination of whether Defendant can rely on the attorney client privilege or the work product doctrine in this federal civil

rights action. *Remus v. Sheahan*, 2006 WL 146006, at *1 (N.D. Ill. 2006); Fed. R. Evid.

501. The Court agrees with Plaintiff that Defendant and its counsel have waived the

ability to rely upon the attorney client privilege or work product doctrine to shield

from discovery McLaughlin's interview notes and his emails to Fialko and any other

communications he had with Fialko about the interviews and McLaughlin's

investigation. Fialko's state of mind when he decided to terminate Plaintiff and his

reason for doing so is a central issue in this case. Fialko testified unequivocally during

his deposition that he fired Plaintiff based upon what McLaughlin told him about his

interviews of Plaintiff and Liggins and what was depicted in the lightened version of

the video. Transcript of Fialko Deposition [ECF 26-1], at 69:19-70:14; 76:6-80-1.  By

placing McLaughlin's investigation of Plaintiff's claims of discrimination and Fialko's

communications with McLaughlin about that investigation squarely at issue in this

case, Defendant has forfeited the ability to rely upon the attorney client privilege or

work product doctrine to shield from discovery counsel's investigation and his

communications with Fialko that led him to terminate Plaintiff.  *Remus v. Sheahan*,

2006 WL 146006, *2 ("[t]he advice of counsel is placed in issue where the client asserts

a claim or defense, and attempts to prove that claim or defense by disclosing or

describing an attorney client communication"), *citing Rhone-Poulenc Rorer Inc., v.

Home Indemnity Co.,* 32 F.3d 851, 863 (3d Cir. 1994) (cited with approval in *Garcia

v. Zenith Electronics Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995)); *Musa-Muaremi

v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 318 (N.D. Ill. 2010).[2]

---

[2] During Fialko's deposition, his attorney McLaughlin confirmed on the record that his
communications with Fialko were the basis for Fialko's decision to fire Plaintiff. Transcript

Defendant argues that McLauglin's "mental impressions" are sacrosanct and insulated from discovery. But McLaughlin's so-called "mental impressions" were communicated to Fialko, and those communications form the basis of Fialko's decision to terminate Plaintiff for dishonesty. The few redacted lines in McLaughlin's interview notes and the more significant redactions from McLaughlin's emails to Fialko are relevant context for what was and was not communicated to Fialko and are relevant to Fialko's termination decision. Defendant's reliance on the advice of its counsel as the basis for terminating Plaintiff renders its counsel's interview notes and communications centrally relevant to a key issue in this case. Neither the attorney client privilege nor the work product doctrine insulates those materials or communications from discovery under these circumstances.[3]

---

of Fialko Deposition [ECF 26-1], at 80:23-81:4 ("Mr. McLAUGHLIN: . . . What I'm saying is that what he's trying to get to is he's making decisions based on things being told to him. The things being told to him are coming from me, and so a decisionmaker like him does have a right to rely upon counsel in an investigation that's conducted."). *See also id.* at 78:3–78:5 ("Q [by Plaintiff's counsel]: . . . are you just going on what Ken [McLaughlin] told you? A [by Fialko]: Yes.").

[3] Defendant's redaction of McLaughlin's emails to Fialko also are inconsistent with respect to McLaughlin's "mental impressions." For example, the clause "We would need to get a lighter version of the dark office video" is not redacted but the rest of that sentence assessing the potential impact of lightening the video is redacted. In addition, the phrase "It does appear as an isolated incident" is not redacted but the rest of the sentence assessing the significance of that observation is redacted. This selective redaction also supports the conclusion that the attorney client privilege and work product doctrine have been waived. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015), quoting *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir.2003) ("Disclosure of confidential communications is inconsistent with the attorney-client relationship and almost invariably waives the privilege 'with respect to the world at large; *selective disclosure is not an option.*'") (Emphasis supplied). *See also In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *6 (D. Idaho Apr. 11, 2014) ("It would be patently unfair for a party to assert that they relied upon the advice of counsel, yet deprive the opponent of the opportunity to understand why the advice

As if to underscore this point, Defendant has now disclosed McLaughlin as a potential trial witness in this case. According to Defendant's supplemental Rule 26(a)(1) disclosures, "Defendant reserves the right to call Kenneth S. McLaughlin, Jr., as a witness for the limited purpose of impeaching Plaintiff's testimony that she never claimed that Tillman Liggins grabbed her in the darkened video at 2:30-2:45am [sic]. During a meeting with Plaintiff and her attorney, Joe Cesario, Plaintiff claimed that the darkened video, if lightened, would reveal Tillman Liggins grabbing Plaintiff, which was not borne out when lightened. Plaintiff's lying about this video was the basis for her termination." Plaintiff's Motion to Strike Defendant's Belated Rule 26(a)(1) Disclosures [ECF 47-1], Exhibit A, at 13. McLaughlin is the only witness to Plaintiff's alleged statement to him about what the lightened video would show. Plaintiff's claimed dishonesty on that point, as relayed to Fialko by McLaughlin, was the basis for Fialko's termination decision. Transcript of Fialko Deposition [ECF 26-1], at 78:3–78:5. Under these circumstances, there is no question based on the case authority cited above that Defendant has waived the attorney client privilege and the work product doctrine as to McLaughlin's notes of his interviews of Liggins and Plaintiff regarding their interactions on July 24, 2018, and his communications with Fialko about that subject.[4]

---

was given, what other alternatives were looked at, why certain advice was rejected, and how the advice was interrelated to other business decisions.").

[4] A few of McLaughlin's emails to Fialko prior to August 10, 2018, which is when Fialko notified Plaintiff she was being terminated for dishonesty (Plaintiff's Second Motion to Compel [ECF 31-3], at Exhibit C), relate to the computation of Plaintiff's owed wages and tips upon termination. These emails were sent on August 7 and 8, 2018. Defendant does not argue these emails should be treated any differently than the emails about McLaughlin's

Plaintiff's counsel cannot effectively cross-examine Fialko about the reason he terminated Plaintiff without seeing McLaughlin's notes of his interviews of Plaintiff and Liggins or McLaughlin's emails with Fialko about those interviews. Plaintiff is entitled to know what was said during those interviews and what McLaughlin communicated to Fialko about those subjects, and McLaughlin's view of the video tape of the incident in question compared to what McLaughlin says Plaintiff told him when he interviewed her. Plaintiff also needs those materials to effectively examine McLaughlin, now a disclosed potential trial witness, either at deposition or trial. *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. at 319 ("It would be unfair to allow an employer to hide its investigations and remedial efforts in the case up to the point of trial when it intends to use related evidence of its remedial efforts to evade liability.").[5]

---

interviews of Liggins and Plaintiff or his review of the lightened video tape. The Court agrees that the attorney client privilege and the work product doctrine are waived for these communications between McLaughlin and Fialko before Plaintiff was terminated, including the emails about the amount Plaintiff should be paid upon termination, because they are related to the termination decision and provide context for it. *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *6 (D. Idaho Apr. 11, 2014) ("To hold otherwise would, in this Court's view, deprive Plaintiffs of the broader context in which the advice was given.").

[5] Whether or not McLaughlin can continue to represent Defendant in this case if he will be a trial witness is a separate question. Defendant recognizes this is an issue and represents that "Defendant's counsel is in the process of securing additional counsel as trial counsel should this need occur." Defendant's Motion to Compel [ECF 50], at 11, fn. 2. *See also* Chief Judge Pallmeyer's 12/13/22 Order [ECF 66] ("The court understands that Attorney McLaughlin will be Defendant's sole witness to testify about statements he claims Plaintiff made in a meeting with McLaughlin and Plaintiff's own previous attorney (now deceased). Plaintiff denies making the statements which Defendant cites as the reason for Plaintiff's discharge. Without deciding whether there has been a waiver, in whole or in part, of the attorney-client privilege for purposes of Plaintiff's pending discovery motions, the court notes Attorney McLaughlin will be a material witness at trial of this case and thus likely disqualified from representing Defendant.").

Defendant's counsel, McLaughlin, also waived any protection that otherwise would be afforded to the notes of his interviews of Liggins or Plaintiff by selectively questioning Liggins about his communications with him during Liggins's deposition. Transcript of Liggins Deposition [ECF 26-3], at 175:9–180:23.[6]  Plaintiff cannot effectively cross-examine Liggins about this testimony or cross-examine Fialko about what McLaughlin told him about his interviews of Plaintiff and Liggins, if Defendant is allowed to stand behind the attorney client privilege or the work product doctrine and insulate from discovery McLaughlin's interview notes and his emails and other communications with Fialko.  *Patrick v. City of Chicago*, 154 F. Supp. 3d at 711; *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *6.

As she requests, Plaintiff will be permitted to reopen the depositions of Fialko and Liggins if she wants to do so after reviewing Defendant's amended responses to written discovery and the interview notes and emails the Court is ordering Defendant to produce.  Plaintiff can question these witnesses about newly disclosed information

---

[6] *See, e.g.,* [ECF 26-3] at 178:16 – 179:11:

> "Q [by McLaughlin]: Okay. And do you recall that I had -- I had explained to you that Natalia had told me in her -- in my office that in that darkened portion of the video is when you were grabbing her?
> A [by Liggins]: Yes.
> Q: Okay. And at that point, did you -- how did you respond when I told you that there was grabbing going on in the dark?
> A: I told you it never happened.
> Q: Okay. And did I not tell you that I couldn't take your word for it, that I'd have to actually lighten the video?
> A: Yes.
> Q: And you understood that that was the whole purpose of lightening the video was to see for my own eyes what had actually taken place?
> A: Yes.
> Q: And that it was only after we had reviewed that video that she was terminated?
> A: Yes."

and can follow up on lines of questioning previously covered to the extent avenues of additional or expanded inquiry are necessary because of the newly disclosed information. To be clear and for the avoidance of doubt, the Court intends this order allowing these depositions to be reopened to be construed liberally and not to prevent questions that Defendant might argue could have been asked about McLaughlin's witness interviews or his communications with Fialko before the disclosure of the new information.

Accordingly, Plaintiff's Second Motion to Compel Discovery [ECF 31] is granted. Defendant shall respond fully to Plaintiff's Requests for Production of Documents Nos. 5-8, and 10, and Plaintiff's Interrogatory No. 7, and produce the unredacted notes (both handwritten and typed)[7] of McLaughlin's interviews of Plaintiff and Liggins as well as McLaughlin's email communications with Fialko about his interviews of Plaintiff and Liggins and any aspect of the videotape filmed at Defendant's restaurant during the early morning hours of July 24, 2018, within 10 days of the date of this Memorandum Opinion and Order. In addition, Plaintiff may reopen the Liggins and Fialko depositions for the reasons and for the purposes discussed above.

---

[7] Defendant produced a typed but redacted version of McLaughlin's handwritten notes rather than the handwritten notes themselves with redactions. McLaughlin says he produced the typed notes because they would be more readable that way. Based on the Court's review of both the handwritten and typed notes, they are not completely identical although the differences may not be material. The layout of the handwritten notes also is sometimes different than the typed version. In any event, Plaintiff is entitled to receive the original, unredacted versions of both the handwritten notes and the typed notes.

## II.

Plaintiff also has moved to strike Defendant's supplemental Rule 26(a)(1) disclosures of McLaughlin and two others (Pauly Solis and Dominic Solis) as potential trial witnesses. Plaintiff's Motion to Strike [ECF 47]. Plaintiff argues the disclosure of these potential witnesses less than a month before fact discovery was set to close came too late and is not substantially justified or harmless within the meaning of Federal Rule of Civil Procedure 37(c)(1), and Plaintiff will be prejudiced if she must depose these witnesses now.

Defendant argues that its decision to wait until July 2022 to disclose McLaughlin as a possible trial witness is substantially justified or harmless and causes no prejudice to Plaintiff. Defendant claims that it determined that McLaughlin might need to testify as a trial witness only after Plaintiff was deposed in February 2022 and testified that she did not tell McLaughlin what he says she told him about what lightening the darkened portion of the video would reveal happened between Plaintiff and Liggins in July 2018. Plaintiff counters that even if that is true, Defendant waited five months to supplement its Rule 26(a)(1) disclosures, and that delay is not substantially justified nor harmless within the meaning of Federal Rule of Civil Procedure 37(c)(1). Plaintiff, however, also knew in February 2022, after the Fialko and Liggins depositions, that Fialko's decision to terminate Plaintiff was based solely on what McLaughlin told him. It is not too much of a leap to surmise that McLaughlin might be a trial witness under those circumstances. Defendant's supplemental disclosures also were made before fact discovery closed, and the newly

disclosed witnesses conceivably could have been deposed before the discovery close date but for the pendency of Plaintiff's motions to compel discovery. [ECF 26, 31].

The Court already has noted Defendant's disclosure of McLaughlin as a potential trial witness. Plaintiff's Motion to Strike is phrased in the alternative; if the Court does not strike McLaughlin as a potential trial witness, then Plaintiff requests that the Court prevent Defendant from using the attorney client privilege and the work product doctrine to stymie questioning of McLaughlin, Fialko, or any other witness about the reason for Plaintiff's termination. As discussed above, the Court agrees that the attorney client privilege and the work product doctrine are deemed waived here by virtue of the positions Defendant has taken in defending this case. The Court will not strike Defendant's disclosure of McLaughlin as a potential trial witness under these circumstances. Plaintiff is entitled to take McLaughlin's deposition if she chooses to do so, and neither the attorney client privilege nor the work product doctrine will foreclose Plaintiff's inquiry about McLaughlin's investigation, his witness interviews, or his communications with Fialko about those subjects.

Plaintiff gives relatively short shrift to her request that the Court strike Defendant's late disclosure of Domenic and Pauly Solis as potential trial witnesses, arguing not much more than they were disclosed too late. Neither witness is a surprise witness. Both were present at Defendant's restaurant and bar on the evening of July 23 and into the early morning hours of July 24, 2018, when the incidents that give rise to Plaintiff's claims occurred. Their existence as potential trial

11

witnesses, therefore, has been known to both parties for some time. Plaintiff implicitly agrees that the fact discovery deadline needs to be extended to allow for depositions and other discovery necessitated by the Court's rulings on Plaintiff's pending motions. Joint Status Report [ECF 57], at 2 ("Plaintiff does not believe that the fact discovery close date should be extended, *except to the extent needed to complete discovery that is subject to Plaintiff's currently pending motions [to compel]."*) (Emphasis added). In addition, Plaintiff, earlier in this case, did not object to Defendant's proposal to depose at least three witnesses after the July 20, 2022, fact discovery close date then in place. ("Defendant seeks to take three depositions on July 25, 2022 . . . Plaintiff does not object to these depositions going forward on that date.").[8]

This case is not yet set for trial, and dates for filing any summary judgment motions have not yet been set. Defendant's supplemental Rule 26(a)(1) disclosures came toward the end of the fact discovery period but not after fact discovery had closed. None of the witnesses that Plaintiff seeks to bar are surprise witnesses. The Court sees no reason to strike Defendant's supplemental Rule 26(a)(1) disclosures under the circumstances of this case. *Compare Dunn v. Brown,* 2022 WL 19323 (N.D. Ill. 2022) (barring additional fact witnesses, long known to disclosing party, disclosed after the close of fact discovery and during expert discovery).

Accordingly, Plaintiff's Motion to Strike [ECF 47] is denied to the extent the Court will not strike Defendant's supplemental disclosures, but the Motion is granted

---

[8] Those three depositions apparently have been completed. Defendant's Reply in Support of Motion to Compel [ECF 62], at 6.

as to the alternative relief requested concerning the deemed waiver of the attorney client privilege and the work product doctrine, and as to the deposition of McLaughlin, including for the reasons discussed above in connection with the Court's ruling on Plaintiff's Second Motion to Compel Discovery [ECF 31].

## III.

Defendant's Motion to Compel [ECF 50] is a long rant and ramble composed of Defendant's seriatim grievances with Plaintiff's responses to Defendant's discovery requests. It does not, however, contain a certification under Local Rule 37.2 that the parties have met and conferred about the deficiencies Defendant perceives exist in Plaintiff's discovery responses or reached an impasse that requires the Court's intervention. Defendant also does not crystallize which of Plaintiff's responses to Defendant's discovery requests remain deficient in Defendant's view or for what reason. And Defendant fails to address Plaintiff's previously stated, written objections to certain of its discovery requests or why those objections are without merit, and it does not ask the Court to overrule any specific objection or cite case law for the proposition that Plaintiff's positions are unsupportable. In fact, no case authority is cited at all in support of Defendant's Motion to Compel. It is settled law in this Circuit that inadequately developed arguments are waived, and the Court need go no further than that (along with noting the absence of a Local Rule 37.2 certification) to deny Defendant's Motion to Compel [ECF 50]. *Spaeth v. Hayes Wheels International-Indiana, Inc.*, 211 F. 3d 392, 397 (7th Cir. 2000); *Securities and Exchange Commission v. Benger*, 931 F. Supp 2d 901, 903 (N.D. Ill. 2013).

The Court, however, has read Defendant's briefs as well as the 31 exhibits Defendant filed in support of its Motion to Compel. The Court also read Plaintiff's patient rebuttal to Defendant's Motion to Compel in which she attempted to address what appear to be the salient highpoints of Defendant's stated dissatisfaction with Plaintiff's discovery responses. Plaintiff's Response to Defendant's Motion to Compel [ECF 59]. Those highpoints fall into three categories – (1) the whereabouts of Aubreon Hubert, Plaintiff's former spouse and a non-party to this case; (2) witness interviews conducted by Plaintiff or her counsel and the identity of witnesses Plaintiff intends to call at trial; and (3) identification of Plaintiff's social media accounts. From what the Court can tell, Plaintiff has properly and sufficiently responded to Defendant's stated issues with Plaintiff's responses to discovery in each of these categories.

Defendant does not respond to Plaintiff's itemization of the arguments Defendant appears to be making in support of its Motion and her response to those arguments. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) (noting that a "[f]ailure to respond to an argument . . . results in waiver" and a party's "silence" in response to an argument leads to the conclusion that a point is conceded). Instead, the arguments in Defendant's reply brief, for the most part, fall into one of two categories: (1) Plaintiff is lying when she says she has produced all documents and information she has in her possession, custody, or control that is responsive to Defendant's discovery requests; and (2) Defendant needs more time for discovery because its efforts are being thwarted by Plaintiff's obstructive conduct. The Court

14

cannot conclude on the record before it that Plaintiff is not telling the truth or that she is obstructing Defendant from conducting proper discovery. To the contrary, it appears that Plaintiff has attempted to respond completely and in good faith to all of Defendant's discovery requests and even to Defendant's counsel's requests for information that was not properly requested in discovery. In addition, the Court can reset the discovery cutoff date to allow both parties to complete discovery that is relevant and proportional to the needs of the case in the wake of the Court's rulings on the discovery motions set forth above, so Defendant is protected as to any remaining discovery it wants to take that is permitted by the Federal Rules of Civil Procedure.

Finally, Defendant's insistence that Plaintiff has not identified all potential witnesses she may call at trial is puzzling. Plaintiff appears to have made and supplemented as appropriate her Rule 26(a)(1) disclosures and the time has not yet come for Plaintiff to identify definitively who she will or may call at trial to support her claims. No trial date has been set nor have the parties been ordered to produce a pretrial order. Defendant appears to be focused on Plaintiff identifying everyone with whom she has communicated about her civil rights claim. Plaintiff has responded adequately to Defendant's discovery in this regard and has made appropriate Rule 26(a)(1) disclosures. On the present record, the Court will not require Plaintiff to do more than she has done so far to identify people with whom she has communicated about her discrimination claims against Defendant.

Accordingly, for all these reasons, Defendant's Motion to Compel [ECF 50] is denied.

**IV.**

For all the reasons discussed in this Memorandum Opinion and Order, Plaintiff's Second Motion to Compel [ECF 31] is granted; Plaintiff's Motion to Strike [ECF 47] is denied, but it is granted with respect to the deemed waiver of the attorney client privilege and the work product doctrine and to allow discovery consistent with that ruling; and Defendant's Motion to Compel [ECF 50] is denied.

It is so ordered.

Jeffrey T. Gilbert
Unites States Magistrate Judge

Dated: December 29, 2022